## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FROMM BARRIERS, INC., | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. _____ |
| MERIDIAN RAPID DEFENSE GROUP, LLC, WHITMARKS, LLC, and PETER WHITFORD, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff, Fromm Barriers, Inc., brings this complaint against defendants, Meridian Rapid Defense Group, LLC, Whitmarks, LLC, and Peter Whitford (collectively, "Defendants"), for violations of the Uniform Trade Secrets Act and breach of a non-disclosure agreement and in support thereof avers as follows:

## THE PARTIES

1.     Plaintiff, Fromm Barriers, Inc. ("Fromm Barriers") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located in Shamokin, Pennsylvania.

2.      Defendant, Meridian Rapid Defense Group, LLC ("MRDG") is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business located in Los Angeles, California.

3.      Upon information and belief, defendant, Whitmarks, LLC ("Whitmarks") is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business located in Los Angeles, California.

4.      Upon information and belief, Whitmarks is an umbrella organization that is a member and owner of MRDG.

5.      Defendant Peter D. Whitford ("Whitford") is an individual who is a citizen of the State of California, residing in Los Angeles, California.

6.      Upon information and belief, Whitford is, and at all relevant times was, the Chairman and Chief Executive Officer of MRDG and Whitmarks.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this action involves parties that are citizens of different States and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that Defendants are subject to personal jurisdiction in this District and a

substantial part of the events giving rise to this action have occurred and continue to occur in this judicial district.

## FACTS

**A.    The Fromm Rapid Deployment Barrier Model 54.**

9.    Fromm Barriers designs and builds tactical/anti-terrorism barrier systems, which are customizable security walls that can be quickly assembled to offer protection to people and structures on one side of the barrier from debris and shrapnel that may result from a vehicle or other attack on the opposite side of the barrier.

10.    Jeff Fromm ("Fromm") is the President and CEO of Fromm Barriers.

11.    Fromm designed and engineered the Fromm Rapid Deployment Barrier Model 54 ("RDB 54").

12.    In 2003, Fromm began working on the concept that eventually became the RDB 54 in response to the attacks against tactical checkpoints in Afghanistan and Iraq that were occurring at that time.

13.    The RDB 54 is a portable, customizable security wall that protects people and structures from armor piercing ammunition and vehicle attacks.  <u>See</u>  RDB 54 Product Information Page, attached hereto as Exhibit A.

14.     The uniqueness of design of the RDB 54 lies in its strength to withstand assaults coupled with its ability to be deployed and relocated by an individual.  Neither cranes nor heavy equipment are required to move the RDB 54.

15.     An individual RDB 54 can be combined with other RDB 54s to form a barrier of any desired length in a short period of time.

16.     The ease of use and mobility of the RDB 54 gives Fromm Barriers a competitive advantage because other barriers providing similar protection require cranes and/or loading equipment to locate and deploy them. Additionally, the interlocking nature of RDB 54 allows the barrier to be customized to the area it is to protect.

17.     Other barriers providing a similar level of protection do not use the same design as the RDB 54; and, therefore, cannot provide the same degree of mobility and customization.

18.     The design specifics of the RDB 54 were developed exclusively by Fromm Barriers after several years of design engineering and testing.

19.     Fromm Barriers has closely guarded the information relating to the design of the RDB 54, and uses non-disclosure agreements.  In addition, Fromm Barriers has applied to the United States Patent and Trademark Office to patent the RDB 54.

20.    Since 2005, Shumaker Industries, Inc. ("Shumaker"), 924 Water Street, Northumberland, Pennsylvania, 17857, has been involved in the preparation of the formal engineering drawings and blueprints for the assembly of the RDB 54.  Shumaker also manufactured a prototype of the RDB 54 for Fromm Barriers.

21.    On October 5, 2006, Shumaker completed a set of assembly and shop drawings for the RDB 54 (the "RDB 54 Drawings").

22.    The RDB 54 Drawings were done at the direction of Fromm Barriers, and were subject to a non-disclosure agreement between Fromm Barriers and Shumaker, entered in October 2005.

23.    Each page of RDB 54 Drawings contains the following language:

> This drawing contains confidential proprietary information of Shumaker Industries, Inc. and is subject to return upon request.  The furnishing of this drawing is not a grant of any license, either express or implied, to manufacture, have manufactured, use or sell the structures shown hereon.

24.    Fromm Barriers has expended more than $185,000 for the research, design, engineering, and marketing of the RDB 54.

25.    Based on the multi-billion dollar defense industry, Fromm Barriers expects to generate millions of dollars of profits based on sales of the RDB 54.

**B.    Fromm Barriers' Introduction to Defendants.**

26.    The parties' short-lived relationship began in July, 2006, when Fromm's son-in-law, Joel Mayer, discussed Fromm Barriers with Howard Kaufman.

27.    Upon information and belief, Kaufman is MRDG's Executive Vice President.

28.    It was through Kaufman that Defendants' became interested in a business relationship with Fromm Barriers.

29.    In August 2006, Defendants' advised Fromm Barriers that they where interested in discussing a joint business venture.

30.    Fromm Barriers understood that this joint venture would rely on an "angel investment" by Defendants' to assist in the production and marketing of the Fromm Barriers' RDB 54.

31.    In addition, Defendants advised Fromm Barriers that their experience and governmental contacts in Washington, D.C. would enhance the marketability of the RDB 54.

32.    In return, Defendants would share in the profits of the sale of the RDB 54 after Fromm Barriers' intellectual property was transferred to the entity created by the joint venture.

33.    To further discussions on this joint venture proposal, Defendants' advised that they would be available to meet with Fromm while he attended the National Tactical Officers Association ("NTOA") trade show in Burbank, California.

34.    The NTOA trade show ran from September 11 to 12, 2006, and usually attracts law enforcement and safety officials from across the country.

35.    Representatives of Fromm Barriers planned on attending the NTOA trade show independent of any proposed meetings with Defendants.

36.    In addition, Defendants offered to facilitate the shipping of a RDB 54 prototype to the NTOA trade show and assist in the production of a single-page marketing sheet for the RDB 54.

37.    On September 11, 2006, Kaufman and Andrew Whitford stopped by Fromm Barrier's trade booth at the NTOA show to discuss the RDB 54.

38.    Upon information and belief, Andrew Whitford is MRDG's Executive Vice President

39.    On September 13, 2006, Fromm and Mayer met with the Defendants in Pasadena, California, where the parties discussed entering into a joint venture relating to the RDB 54 along the lines outlined in Paragraphs 29 through 32 above.

40.     At this initial meeting, the parties discussed design of the RDB 54 and the need for further testing of the RDB 54 at the Pennsylvania State University in State College, Pennsylvania (the "Penn State Test").

41.     Prior to this meeting, Defendants had limited knowledge of the barrier industry.

**C.     Non-Disclosure Agreement and the Design of the RDB 54.**

42.     In order to facilitate the discussions of the proposed joint business venture, the parties entered into an oral non-disclosure agreement.

43.     Under the oral non-disclosure agreement, discussions of the RDB 54's design were done in good faith, and the parties agreed that all of the information, facts and specifics related to the design and engineering of the RDB 54 would not to be used by Defendants except in furtherance of the proposed joint venture.

44.     In addition, Defendants were not a granted of any license, either express or implied, to manufacture, have manufactured, use or sell the RDB 54.

45.     Fromm Barriers relied on non-disclosure agreement and Defendants' statements that the design of the RDB 54 would be handled in good faith and kept confidential.

46.    On October 6, 2006, in connection with the Penn State Test and the parties' early business relationship, Defendants' received a copy of the RDB 54 Drawings via email.

**D.    Preparations for the Penn State Test.**

47.    The Penn State Test was an important step in the budding business relationship because it would demonstrate the effectiveness of the RDB 54 to the Defendants.

48.    The Penn State Test was to involve testing the ability of the RDB 54 to resist impacts from moving vehicles of a specific weight at a specific velocity.

49.    In further preparation for the Penn State Test, Defendants purchased trailers in Pennsylvania to transport the barriers to the test site.

50.    The Penn State Test was a prerequisite to getting a K-4 rating from the U.S. Department of State.

51.    Defendants also purchased a truck to crash into the barriers as part of the test in Pennsylvania.

52.    Later, however, Penn State purchased the crash truck back from Defendants.

53.    On October 11, 2006, Peter Whitford and Brad Smith flew to Pennsylvania to further prepare for the Penn State Test of the RDB 54.

54.    Upon information and belief, Smith is the Executive Vice President of MRDG.

55.    Whitford and Smith traveled to the testing facility near State College, Pennsylvania, and discussed the test with Robin Tallon at Penn State.

56.    Whitford and Smith traveled to Penn State upon their own initiative and not at the request of Fromm Barriers.

57.    On October 12, 2006, Fromm meet with Whitford and Smith for several hours in Northumberland, Pennsylvania to discuss the proposed joint venture and Fromm Barriers' concerns with entering into the joint venture.

58.    On October 13, 2006, Whitford, and Smith attended a meeting at Shumaker, in Northumberland, Pennsylvania, with Brett Shumaker, Ken Kremser and Allan Thomas of Shumaker.

59.    At this meeting, Whitford directed Shumaker to manufacture fifteen RDB 54 barriers to be used in the Penn State Test.

60.    Fromm Barriers has since paid Shumaker approximately $13,300 for the manufacture of these twelve barriers, and Defendants have paid nothing.

### E.    Subsequent Negotiations between the Parties.

61.    On October 18, 2006, Whitford sent an email to Fromm Barriers attaching a proposed operating agreement between MRDG and Fromm Barriers.

62.    Over the next several weeks, the parties discussed the proposed agreement by telephone and electronic mail.

63.    On November 29, 2006, Fromm Barriers responded to the proposal sent on October 18, 2006.

64.    Thereafter, the parties' business relationship deteriorated, and no agreement was reached.  In addition, the Penn State Test as planned by the parties did not occur.

### F.    The MRDG Barrier and Misappropriation of Fromm Barrier's Trade Secrets.

65.    In 2007, it came to Fromm Barriers' attention that MRDG was testing a barrier almost identical to the RDB 54 called the Arch Barrier 1000.

66.    MRDG advertises the Archer Barrier 1000 a barrier that can be: rapidly deployed in the field of operations; moved by two people; set up in a variety of schematic formats that for military and tactical units to secure perimeters based on changing field conditions.  Additionally, the Archer Barrier 1000 is designed to withstand armor piercing ammunition and vehicle crashes.  See Archer Barrier 1000 Product Information Page, attached hereto as Exhibit B.

67.    Prior to October 17, 2006, MRDG did not exist.  Defendants did not have experience in or knowledge of the design and production of military barriers until September 2006, where they met with Fromm Barriers.

68.    Within five months of exposure to the information relating to the design of the RDB 54, however, MRDG was able to manufacture, test, and market the Archer Barrier 1000.

69.    Upon information and belief, MRDG was able to rapidly manufacture and market the Archer Barrier 1000 because Defendants' based the Archer Barrier 1000 on Fromm Barriers' RDB 54.

70.    Defendants' had access to Fromm Barriers' trade secrets relating to the design of a portable, customizable security wall that protects people and structures from armor piercing ammunition and vehicle attacks by virtue of the parties' discussion of a joint venture.

71.    MRDG's Archer Barrier 1000 incorporates one or more of the design inventions created and developed by Fromm Barriers.

72.    Upon information and belief, Defendants are presently marketing the Archer Barrier 1000 to customers, including, potential customers of Fromm Barriers.

73.     Defendants have not sought or obtained a license and are not authorized or permitted to market, manufacture, use, offer for sale, or sell products incorporating any of the part of the design of the RDB 54.

## COUNT I
## VIOLATION OF THE UNIFORM TRADE SECRETS ACT

74.     Fromm Barriers incorporates the allegations of paragraph 1 through 73, inclusive, of this Complaint as though the same were fully set forth herein.

75.     The design of the RDB 54 is unique because it can withstand armor-piercing ammunition and vehicle assaults, but is also capable of being deployed and relocated by individual members of a tactical unit.

76.     The information relating to the design of the RDB 54, including, the schematics, specific materials, and their integration, are not generally known.

77.     The information relating to the design of the RDB 54 is not readily ascertainable by others who can derive economic value from its use.

78.     Fromm Barriers derives economic value, actually and impliedly, from the information relating to the design of the RDB 54.

79.     Fromm Barriers has taken reasonable efforts under the circumstances to maintain the secrecy of the information relating to the design of the RDB 54.

80.     Defendants acquired and used the information relating to the design of the RDB 54 from Fromm Barriers through misrepresentation, among other means, and, accordingly, acquired the design of the RDB 54 from Fromm Barriers improperly.

81.     Fromm Barriers and MRDG are direct competitors.

82.     Defendants have acquired the Fromm Barriers' trade secret of the unique design of the RDB 54, and Defendants knew and/or had reason to know that Fromm Barriers' trade secret was acquired by improper means.

83.     In their conduct, Defendants' were recklessly indifferent to the rights of Fromm Barriers, and, accordingly, Defendants' conduct was willful and malicious.

84.     Fromm Barriers has suffered monetary damages as a result of the misappropriation of its trade secrets by Defendants with respect to the information relating to the design of the RDB 54 in an amount in excess of $75,000.

85.     The misappropriation by Defendants of Fromm Barriers' trade secretes has irreparably harmed Fromm Barriers and will continue to do so unless enjoined by this Court.

WHEREFORE, Plaintiff Fromm Barriers, Inc. respectfully requests that this Court:

a.    Enjoin Defendants and their respective agents, servants, representatives, officers, directors, employees, affiliates and all persons acting in concert with them, directly or indirectly, from misappropriating, inducing others to misappropriate and/or contributing to the misappropriation of Fromm Barriers' trade secrets with respect to the design of the RDB 54 pursuant to 12 Pa.C.S.A. § 5303;

b.    Award Fromm Barriers monetary damages, in an amount in excess of $75,000, pursuant to 12 Pa.C.S.A. § 5304(a);

c.    Declare Defendants' acts to be "willful and malicious" and award Fromm Barriers exemplary damages under 12 Pa.C.S.A. § 5304(b) and reasonable attorneys' fees, expenses, and costs under 12 Pa.C.S.A. § 5305(3); and

d.    Grant Fromm Barriers such other relief as is just and proper.

## COUNT II
## BREACH OF NON-DISCLOSURE AGREEMENT

86.    Fromm Barriers incorporates the allegations of paragraph 1 through 85, inclusive, of this Complaint as though the same were fully set forth herein.

87.     Fromm Barriers and Defendants entered into an oral non-disclosure agreement with regard to the information relating to the design of the RDB 54.

88.     Defendants' representations were material to the exploration of a business venture between the parties.

89.     Under the oral non-disclosure agreement, Defendants agreed that that would keep the information relating to the design of the RDB 54 confidential and act in good faith.

90.     Defendants breached the non-disclosure agreement when they improperly used Fromm Barriers' information protected by the non-disclosure agreement to design, manufacture, test, promote and sell the Archer Barrier 1000.

91.     Defendants' breach of the non-disclosure agreement have and will continue to cause Fromm Barriers damages.

WHEREFORE, Plaintiff Fromm Barriers, Inc. respectfully requests that this Court:

a.     Enter judgment in Fromm Barriers' favor and against Defendants, jointly and severally, in the amount of damages described above;

b.     Award Fromm Barriers its reasonable attorneys' fees and costs; and

c.     Grant Fromm Barriers such other relief as is just and proper.

Respectfully submitted,


 s/  Patrick J. Troy                            .
 David E. Landau  (Pa. Id. 43341)
 Patrick J. Troy      (Pa. Id. 89890)

Wolf, Block, Schorr and Solis-Cohen
1650 Arch Street, 22nd Floor
Philadelphia, PA  19103
(215) 977-2000

Attorneys for Plaintiff, Fromm
Barriers, Inc.

Dated:  October 22, 2007